IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LARRY HOLDER,

    Plaintiff,

v.                                                                                                       1:17-cv-01206-LF

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Larry Holder's Substitute Motion to Reverse and/or Remand (Doc. 25), which was fully briefed on November 20, 2018. *See* Docs. 26, 27, 28.[1] The parties consented to my entering final judgment in this case. Docs. 9, 10, 11. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Appeals Council erred by failing to consider the additional evidence submitted by Mr. Holder. I therefore GRANT Mr. Holder's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] Mr. Holder's first Motion to Reverse or Remand was not a complete brief. Doc. 20. Mr. Holder filed an unopposed motion requesting permission to file the correct document, which the Court granted. Docs. 23, 24.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.     Background and Procedural History

Mr. Holder was born in 1964, completed the tenth grade, and worked for approximately 14 years as a carpet installer, for approximately seven months as a fiberglass finisher, and for six months as a maintenance person. AR 54, 65, 82, 190, 242.[3] Mr. Holder filed an application for Disability Insurance Benefits ("DIB") on September 10, 2015 and an application for Supplemental Security Income ("SSI") on September 17, 2015,[4] alleging disability since July 8, 2015 due to osteoarthritis and "otheridis in wrists." AR 190–98, 241. The Social Security

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 15-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[4] Mr. Holder filed a second application for SSI on and January 29, 2016. AR 198–220.

Administration ("SSA") denied his claims initially on October 21, 2015. AR 88–89, 113–120.[5] Mr. Holder requested a hearing before an ALJ. AR 121–22. On April 25, 2017, ALJ Kathryn Burgchardt held a hearing. AR 49–87. ALJ Burgchardt issued her unfavorable decision on June 27, 2017. AR 12–31.

The ALJ found that Mr. Holder met the insured status requirements of the Social Security Act through June 30, 2018. AR 17. At the hearing, Mr. Holder amended his alleged onset date to February 1, 2015. AR 15, 17, 52. At step one, the ALJ found that Mr. Holder had not engaged in substantial, gainful activity since his amended alleged onset date. AR 17. At step two, the ALJ found that Mr. Holder's bilateral arthritis of the wrists, degenerative disc disease of the cervical spine, and left shoulder impairment were severe impairments. AR 17–18. At step three, the ALJ found that none of Mr. Holder's impairments, alone or in combination, met or medically equaled a Listing. AR 18–19. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Holder's RFC. AR 19–24. The ALJ found Mr. Holder had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. He can stand or walk with normal breaks for a total of six hours in an eight-hour workday and sit with normal breaks for a total of six hours in an eight-hour workday. He can perform pushing and pulling motions with upper and lower extremities within the weight restrictions given. He can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching; however handling and fingering bilaterally would be limited to only frequent. The claimant should avoid unprotected heights and moving machinery. He should not climb any ladders, ropes or scaffolds, should avoid extreme cold, and should avoid overhead reach bilaterally.

AR 19.

---

[5] Mr. Holder did not request reconsideration of the initial denial of his claims. *See* AR 15. The initial denial letters in his case advised him to request an ALJ hearing if he disagreed with the denial of his claims. *See* AR 114, 118.

At step four, the ALJ concluded that Mr. Holder could not perform his past relevant work as a carpet installer, but could return to his past relevant work as a fiberglass finisher. AR 24. The ALJ thus found Mr. Holder not disabled at step four. Alternatively, the ALJ found Mr. Holder not disabled at step five because he could perform jobs that exist in significant numbers in the national economy—such as bench assembler, photo copy machine operator, and small products assembler. AR 24–25.

Mr. Holder requested that the Appeals Council review the ALJ's unfavorable decision. AR 188–89, 310. Mr. Holder submitted additional evidence to the Appeals Council. *See* AR 11, 32–48. The Appeals Council did not consider or "exhibit" most of the additional evidence and found the rest "did not relate to the period at issue." AR 2. On October 24, 2017, the Appeals Council denied the request for review. AR 1–5. Mr. Holder timely filed his appeal to this Court on December 7, 2017. Doc. 1.[6]

### IV. Mr. Holder's Claims

Mr. Holder raises three arguments for reversing and remanding this case: (1) the Appeals Council erred in refusing to consider his June 21, 2017 MRI; (2) the ALJ failed to explain why key medical evidence was rejected or not considered; (3) the ALJ's finding that he can perform his past relevant work and three other jobs is inconsistent with the RFC that states he must avoid overhead reaching. Doc. 25 at 16–21. I find that the Appeals Council erred by failing to consider additional evidence submitted by Mr. Holder. Because the Appeals Council failed to consider the evidence Mr. Holder submitted, the case will be remanded so that the Appeals Council may reevaluate the ALJ's decision in light of the completed record.

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 3.

V.  **Analysis**

   A. <u>The Appeals Council erred by failing to consider additional evidence submitted by Mr. Holder</u>.

The ALJ issued her unfavorable decision on June 27, 2017. *See* AR 12–31. Thereafter, Mr. Holder submitted additional evidence and requested that the Appeals Council consider the following:

1. Records from Gunnison-Griggs Orthopedics dated May 27, 2014 through June 2, 2017 (AR 32–46);
2. Records from Rocky Mountain Spine Clinic dated December 29, 2016 through March 29, 2017 (AR 391–404)[7];
3. A lumbar MRI from an unknown source and undated (AR 47–48); and
4. A record from Rocky Mountain Spine Clinic dated June 30, 2017 (AR 11).

The Appeals Council found that the evidence listed in 1, 2, and 3 above "does not show a reasonable probability that it would change the outcome of the decision," and therefore it "*did not consider* and exhibit this evidence." AR 2 (emphasis added). As for the evidence listed in number 4, the Appeals Council stated that "[t]he Administrative Law Judge decided your case through June 27, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 27, 2017." *Id*. The Appeals Council thus did not consider any of the additional evidence submitted by Mr. Holder. *See Padilla v. Colvin,* 525 F. App'x 710, 712 (10th Cir. 2013) (unpublished) ("the Appeals Council's dismissal of the additional evidence's import on the grounds that it was not temporally relevant indicates that it ultimately found the evidence did not

---

[7] The ALJ actually considered these records from Rocky Mountain Spine Clinic. *See* AR 52–53 (ALJ acknowledged receipt of 15 pages of records from Rocky Mountain Spine Clinic the day before the hearing); AR 31 (list of exhibits attached to the ALJ's decision showing office treatment records from Rocky Mountain Spine Clinic dated December 29, 2016 through March 29, 2017 as an exhibit); AR 391–404 (treatment records). Mr. Holder's alleged errors, however, do not focus on the Appeals Council's failure to consider this evidence. *See* Doc. 25 at 16−18.

6

qualify for consideration at all.").

Mr. Holder primarily argues that the Appeals Council erred by failing to consider a June 21, 2017[8] MRI (evidence listed in number 3 above) which showed "very severe degenerative disc disease" at L5-S1. Doc. 25 at 16–17; AR 47. He argues that the MRI is "conclusive evidence of a lower back impairment." Doc. 25 at 16. Mr. Holder argues that this new evidence is material because the ALJ never considered disorders of the lumbar spine during the sequential evaluation process. *Id*. at 18. The Commissioner argues that "the Appeals Council's discussion of [the newly submitted evidence] plainly shows that it considered that evidence." Doc. 26 at 5. The Commissioner goes on to assert that "the Appeals Council was not required to give more explanation about how it considered additional evidence submitted to it than it did; and that additional evidence does not undermine the ALJ's decision in this case." *Id*. at 4. On the former point, I disagree with the Commissioner. I find that the Appeals Council did not consider the additional evidence. The Appeals Council stated, "[w]e did not consider . . . this [additional] evidence," AR 2, and there is no reason not to take the Council at its word. And although the Appeals Council also said that it found that "this evidence does not show a reasonable probability that it would change the outcome of the decision," *id.*, this standard is one that relates to whether evidence qualifies for consideration (and therefore review by the Appeals Council) and does not indicate how the Appeals Council evaluated the evidence in conjunction with the rest of the record. *See Threet v. Barnhart*, 353 F.3d 1185, 1191−92 (10th Cir. 2003) (listing

---

[8] The Commissioner points out that the only date on the MRI is the date on the bottom, 6/21/17, showing when the MRI was printed. Doc. 26 at 6 n.4. In the context of the record as a whole, however, it is apparent to this Court that the MRI was ordered by Dr. Griggs on June 2, 2017. *See* AR 33–34 (showing that Mr. Holder complained of pain/injury to the lumbar spine and "elected MRI to obtain more information"). The MRI was therefore done some time between June 2, 2017 (the date it was ordered) and June 21, 2017 (the date the report was printed). The exact date within that time frame is not important.

standards under 2003 regulations for determining whether new evidence qualifies for consideration); *Bisbee v. Berryhill*, No. 18-CV-0731 SMV, 2019 WL 1129459, at *3 & n.5 (D.N.M. Mar. 12, 2019) (unpublished) (listing current standards for determining whether new evidence qualifies for consideration, which includes whether there is a "reasonable probability that it would change the outcome").

Having considered the parties' arguments and the applicable law, I find that the ALJ erred in failing to consider the new evidence submitted by Mr. Holder.

1. Applicable Law

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to de novo review. *Threet*, 353 F.3d at 1191. The Appeals Council must review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5); 416.1470(a)(5) (both effective Jan. 17, 2017).[9] Evidence is new "if it is not duplicative or cumulative," and it is material "if there is a reasonable possibility that it would have changed the outcome." *Threet*, 353 F.3d at 1191 (alterations omitted) (internal quotation marks omitted). The new regulations that require a claimant to show a "reasonable *probability* that the additional evidence would change the outcome of the decision" can be read as a heightened materiality standard. *See Bisbee*, 2019 WL 1129459, at *3 n.5 (noting that the new regulations "heightens the claimant's burden to prove materiality: whereas the previous test required merely a reasonable possibility of changing the outcome, now it requires a reasonable probability of changing the outcome").

---

[9] The requirement that the additional evidence create a "reasonable probability" of changing the outcome of the decision was added to the regulations on January 17, 2017, with compliance required by May 1, 2017. *See* 81 Fed. Reg. 90,987 (Dec. 16, 2016), 2016 WL 7242991 (F.R.).

8

Evidence is chronologically pertinent if it relates to the time period on or before the ALJ's decision. *Threet*, 353 F.3d at 1191. If the Appeals Council fails to consider qualifying new evidence, the case should be remanded so that the Appeals Council may reevaluate the ALJ's decision in light of the complete record. *Id.*

### 2. Inapplicable Law

The Commissioner erroneously states that "the Appeals Council's denial of [Mr. Holder's] request for review is not judicially reviewable." Doc. 26 at 4. The Commissioner cites 20 C.F.R. § 404.972 for this assertion. *Id*. at 5. However, 20 C.F.R. § 404.972 states that "[t]he **dismissal** of a request for Appeals Council review is binding and not subject to further review." (Emphasis added). The dismissal of a request for review is not the same as a denial of a request for review. The Appeals Council will dismiss a request for review when the request for review was not timely, and may dismiss it at the claimant's request. *See* 4 SOC. SEC. LAW & PRAC. § 53:35; *see also Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) ("If a claimant misses the deadline and cannot show good cause, . . . the Appeals Council does not deny the request but rather dismisses it.").[10] This case does not involve a **dismissal** of review. Instead, it involves a **denial** of a request for review. *See* AR 1 ("[W]e have denied your request for review."). And, as previously explained, whether evidence qualifies for consideration by the Appeals Council is a question of law subject to de novo review. *Threet*, 353 F.3d at 1191.

Next, the Commissioner argues that this Court must "consider the additional evidence

---

[10] *Smith* overturned prior cases holding that dismissals based on untimely requests for review were not judicially reviewable, *see, e.g.*, *Brandtner v. Dep't of Health & Human Servs.*, 150 F.3d 1306, 1307 (10th Cir. 1998). *Smith*, 139 S. Ct. at 1774 ("The question here is whether a dismissal by the Appeals Council on timeliness grounds after a claimant has received an ALJ hearing on the merits qualifies as a "final decision . . . made after a hearing" for purposes of allowing judicial review under § 405(g). In light of the text, the context, and the presumption in favor of the reviewability of agency action, we conclude that it does.").

9

alongside the evidence in the case that was available to the ALJ . . . to determine whether the ALJ's decision remains supported by substantial evidence." Doc. 26 at 5 (citing *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017)). *Vallejo* does not support this proposition. In *Vallejo*, the Tenth Circuit held that when a claimant submits new evidence to the Appeals Council *and the Appeals Council accepts and considers it*, that evidence becomes a part of the record to be considered by the Court in performing a substantial evidence review. 849 F.3d at 955. That is not the case here. In this case, the Appeals Council *did not accept or consider* the additional evidence. AR 2. Thus, the only question before the Court is whether the Appeals Council should have done so. *See Padilla*, 525 F. App'x at 712 n.1 ("If the Appeals Council did not consider the additional evidence because it did not qualify for consideration . . . , then the question on appeal is whether the Appeals Council erred in failing to do so. If the Appeals Council did accept and consider the new evidence, then the question on appeal is whether the ALJ's decision was supported by substantial evidence in light of the new evidence."). Only after the Appeals Council reviews the entire record—including the qualifying new evidence—under the standard provided in 20 C.F.R. § 404.970(a)(5), may the Court "properly review the denial of benefits . . . under the deferential substantial-evidence standard." *Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004). However, "[i]f the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings." *Id*. Because the Appeals Council did not accept or consider the new evidence and should have, it would be improper for this Court to perform a substantial evidence review of the ALJ's decision.

3. Analysis Under Applicable Law

For the reasons explained below, the Court finds that Mr. Holder submitted evidence that was new, chronologically pertinent, and material in that there is a "reasonable probability" that

the additional evidence would change the outcome of the decision. The Appeals Council failed to consider this qualifying new evidence. The Court therefore remands so that the Appeals Council may reevaluate the ALJ's decision in light of the complete evidence.

First, there is no dispute that the June 21, 2017 MRI of Mr. Holder's lumbar spine is new evidence. It is not "duplicative or cumulative," as there was no other MRI of the lumbar spine in the record before the ALJ. The June 21, 2017 MRI indicates the following:

> L5-S1 Very severe degenerative disc disease. Severe fibrovascular reactive endplate changes. Large diffuse disc bulge. No lateral recess stenosis. Moderate facet hypertrophy. Bilateral foraminal stenosis with compression of the exiting L5 nerve roots bilateral. Moderate compression of thecal sac secondary to epidural lipomatosis.

AR 47. The MRI thus provides substantial new evidence concerning Mr. Holder's lower back impairment. As Mr. Holder points out, the ALJ did not consider Mr. Holder's lower back impairment at any step of the sequential evaluation process. Doc. 25 at 16–17. The Commissioner concedes that "there [were] no medical records addressing a lower back impairment in the record that was before the ALJ." Doc. 26 at 7. Thus, the MRI is new evidence.

Second, the June 21, 2017 MRI is chronologically pertinent. The MRI was done before June 21, 2017. The ALJ rendered her decision on June 27, 2017. *See* AR 12–31. Thus, the MRI relates to the time period on or before the ALJ's decision and is chronologically pertinent. *Threet*, 353 F.3d at 1191. The Commissioner appears to concede that the MRI is chronologically pertinent. *See* Doc. 26 at 7 ("the new evidence may be sufficient to show that [Mr. Holder] had a lower back impairment as early as June 2017—about a month before the date of the ALJ's decision.").

Third, the June 21, 2017 MRI is material because there is a reasonable probability that it

would have changed the outcome. *See Threet*, 353 F.3d at 1191; 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). As Mr. Holder explains, there is a reasonable probability that consideration of the MRI would have affected the sequential evaluation process, and that this would have changed the outcome of the case. At step two, the MRI would have established that Mr. Holder had a severe impairment of the lumbar spine, an impairment not considered by the ALJ.

Mr. Holder argues that there is a reasonable probability that consideration of the MRI would have resulted in a finding that he met a Listing at step three. Mr. Holder, however, fails to point to any evidence showing he would meet the definition of "inability to ambulate effectively" included in the criteria of Listing 1.04. In order to meet this Listing, a claimant must show the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> . . .
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.[11] As Mr. Holder points out, the June 21, 2017 MRI

---

[11] Pseudoclaudication can be a symptom of lumbar spinal stenosis, a condition that occurs when the spinal canal narrows in your lower back. This narrowing can be caused by bulging disks, bone spurs or a thickening of the supportive ligaments in the back of the spinal canal.

The nerve roots that control movement and sensation in your legs pass through these narrow areas in your spinal canal. If these areas become too narrow, they can put pressure on the nerve roots. Pseudoclaudication pain is made worse by standing or walking, and is usually relieved by sitting or lying down.

https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/expert-answers/pseudoclaudication/faq-20057779 (last visited June 25, 2019).

arguably showed pseudoclaudication because it showed "[b]ilateral foraminal stenosis with compression of the exiting L5 nerve roots bilateral." AR 47. In addition, other new evidence in the form of Dr. Griggs' medical report dated June 6, 2017, noted that Mr. Holder had pain in the lumbar spine which radiated down both legs, but more often the left, and resulted in weakness and inability to complete the daily walking he was ordered to do after cervical spine surgery. AR 33.

But to meet the Listing, Mr. Holder also would have had to show an "inability to ambulate effectively, as defined in 1.00B2b." This section of the Listings defines inability to ambulate effectively as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00B2b1. Ambulating effectively is defined as follows:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00B2b2. Mr. Holder argues that his "testimony that he cannot walk without a cane or long enough to satisfy his doctor's instructions establishes that he cannot ambulate effectively." Doc. 25 at 17. Under the Listing definitions, however, inability to ambulate effectively requires the use of two handheld assistive devices, not just one. Mr. Holder

testified that he used one cane. AR 74. And Mr. Holder's inability to follow his doctor's walking instructions also does not show that he meets the Listing relating to effective ambulation. On June 2, 2017, Mr. Holder advised Dr. Griggs that "he was told to walk every day since his neck surgery and is only able to get through part of his walk before his back starts hurting him." AR 33. There is no indication in this treatment note about how far Mr. Holder is able to walk, or that his walking is limited to the degree necessary to find ineffective ambulation under the Listings. Therefore, the Court concludes that Mr. Holder has not shown a reasonable probability that the new evidence would result in his meeting Listing 1.04.

Nonetheless, the Court finds that there is a reasonable probability that consideration of the new evidence would have changed Mr. Holder's RFC, and therefore would have changed the outcome in this case. The ALJ discounted evidence in the record showing that Mr. Holder was limited in his ability to sit and stand long enough to do light work. There is a reasonable probability that the ALJ would not have discounted this evidence had the newly submitted evidence been part of the record. Erica Eaton, a certified physician's assistant, opined that Mr. Holder needed a "job that permits shifting positions at will from sitting, standing, or walking." AR 366. She also opined that Mr. Holder would need to "take unscheduled breaks or include periods of walking around" for five to ten minutes every hour. *Id*. Mr. Holder testified that he had difficulty with prolonged sitting and standing. AR 73. He testified that he could sit for a maximum of ten minutes and stand for a maximum of ten minutes: "I got to sit down or walk around or. It just always coming in and out, and it goes from one spot to the other." AR 74. The ALJ, however, found Mr. Holder capable of light work. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10 (S.S.A.

1983), 1983 WL 31251 at *5. The ALJ's RFC and hypothetical to the vocational expert ("VE") was an individual who could "stand or walk with normal breaks for a total of six hours in an eight-hour workday" and who could "sit with normal breaks for a total of six hours in an eight-hour workday." AR 19, 83. When the hypothetical was changed to an individual who needed "unscheduled breaks every hour, which would include walking around leaving the workstation for five to ten minutes," the VE testified that such an individual was precluded from employment. AR 84–85.

> The Commissioner argues that
>
> The ALJ also considered and addressed [Mr. Holder's] testimony that he had lower back pain that required him to use a cane to walk and considered [Mr. Holder's] subjective symptom testimony about standing and walking limitations from pain from increased activity, but found that the evidence of record was inconsistent with that testimony.

Doc. 26 at 7 (citing AR 20–22, 54–55, 71). The ALJ found that Mr. Holder's "statements concerning the intensity, persistence and limiting effects of [his reported] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 21. But the ALJ did not specifically discuss why she rejected Mr. Holder's reported limitations in sitting and standing. *See* AR 20–26.[12] In addition, the June 21, 2017 MRI calls into question the ALJ's conclusion that Mr. Holder's reported limitations in sitting and standing were not supported by the medical evidence. *See Threet*, 353 F.3d at 1191 (finding MRI done one day prior to ALJ issuing his opinion but submitted only to the Appeals Council was material because it

---

[12] The Commissioner points to the fact that the ALJ noted that Mr. Holder "testified that he uses a cane on a daily basis," but that use of a cane was not noted in his treatment records. Doc. 26 at 7 (citing AR 20). This evidence, however, does not explain why the ALJ discredited Mr. Holder's reported limitations with sitting and standing. The Commissioner also analyzes some of the new evidence not considered by the Appeals Council to argue that the ALJ's decision is still supported by substantial evidence. Doc. 26 at 6–7. As discussed in the "Inapplicable Law" section above, that is not the proper analysis in this case.

15

"reasonably call[ed] into question the disposition of the case," which the ALJ based on the fact that claimant had no further medical treatment and the medical evidence in the record showed claimant had improved). The June 21, 2017 MRI that the Appeals Council did not consider makes Mr. Holder's testimony much more consistent with the medical evidence of record. There is a reasonable probability that consideration of this evidence would have changed Mr. Holder's RFC, thereby changing the outcome of the case.

The probability of the additional evidence changing the outcome in this case is further illustrated by the ALJ's meticulous RFC analysis of the severe impairments she did consider. The ALJ specifically discussed the medical evidence and included limitations in Mr. Holder's RFC based on his wrist impairments, on his degenerative disc disease of the cervical spine, and on his shoulder impairments. AR 21–22. The Court finds there is a reasonable probability that had the ALJ considered the new evidence showing Mr. Holder's lower back impairment, she would have included sitting and standing limitations in his RFC, and that there is a reasonable probability that this would have changed the result in this case. The Appeals Council erred in failing to consider the new evidence.

## VI. Conclusion

The Appeals Council erred by failing to consider the additional evidence submitted by Mr. Holder. The Court remands so that the Appeals Council may reevaluate the ALJ's decision in light of the completed record.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 25) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent